# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2195

_____

| | | |
|---|---|---|
| Bankcard Systems, Inc.; Raymond C. Hyatt; Myra Overright Hyatt, | * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the Western District of Missouri. |
| Miller/Overfelt, Inc., doing business as Jack Miller Jeep Eagle; Chrysler Financial Corporation; Dale E. Overfelt; Melissa S. Overfelt; Aaron Loughlin; Gary Meschon, Jr.; Richard Ogden, Jr.; John B. Heshion, | * * * * * * * | |
| Appellees. | * | |

_____

Submitted: January 10, 2000

Filed: July 19, 2000
_____

Before WOLLMAN, Chief Judge, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Raymond C. Hyatt, Myra Overright Hyatt, and Bankcard Systems, Inc. (Bankcard), brought suit in federal district court against Miller/Overfelt, Inc., d/b/a Jack Miller Jeep Eagle (Miller Jeep), several named corporate officers and employees of

Miller/Overfelt, Inc., and Chrysler Financial Company, L.L.C. (Chrysler) (collectively, respondents), asserting a variety of claims that developed from the attempted purchase of a business vehicle. The district court[1] dismissed the action for failure to state a claim, holding that the claims should have been brought as compulsory counterclaims in state court. We affirm.

## I.

In February of 1998, the Hyatts, who are corporate officers of Bankcard, went to the Miller Jeep dealership in North Kansas City, Missouri, and negotiated the purchase of a 1998 Jeep Grand Cherokee for Bankcard's use. The arrangement included the dealership's acceptance of the Hyatts' two personal vehicles as trade-ins. After Raymond Hyatt signed on behalf of Bankcard a retail installment contract and a rider concerning contract assignment, Bankcard took possession of the Cherokee. Approximately one week later, employees from Miller Jeep requested that the Hyatts sign a new contract. Because the Hyatts believed that the new contract changed the terms of the agreement, they, on behalf of Bankcard, refused to sign it and retained the Cherokee. A number of discussions occurred between the representatives of Bankcard and representatives of Miller Jeep during the following months, but the parties were unable to resolve their disagreements. In May of 1998, Miller Jeep repossessed the Cherokee. The Hyatts' trade-in vehicles were repossessed from the Miller Jeep lot by lien holders for want of payments.

On December 9, 1998, Miller Jeep filed suit solely against Bankcard in the Circuit Court of Clay County, Missouri, petitioning for damages for breach of contract.[2]

---

[1]The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

[2]Because to our knowledge the state court action has not yet proceeded to final judgment, the doctrines of claim preclusion and issue preclusion are inapposite. See,

On December 23, 1998, the Hyatts filed suit against the respondents in the United States District Court for the Western District of Missouri, alleging breach of contract, fraud, intentional infliction of emotional distress, conspiracy to commit fraud, malicious prosecution, and racketeering claims under the Racketeer Influenced and Corrupt Organizations Act (RICO).

The district court dismissed the claims against Miller Jeep and the individual defendants on March 22, 1999, and against Chrysler on April 6, 1999, finding that Missouri Supreme Court Rule 55.32(a) required the Hyatts to bring all their claims as counterclaims in the state court action. The Hyatts appeal, contending that because the state court action involves only the validity of the rider to the contract and because none of their claims implicate the rider, they and Bankcard should be allowed to proceed in federal court. They further argue that even if their contract claims are precluded, their RICO-based claim should survive in federal court.[3]

## II.

We review de novo the district court's dismissal of the claims for failure to state a cause of action. See Helvey v. City of Maplewood, 154 F.3d 841, 844 (8th Cir. 1998). "A complaint should not be so dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief." Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998). To determine whether the complaint should be dismissed because

---

e.g., Popp Telcom v. American Sharecom, Inc., 210 F.3d 928, 939-41 (8th Cir. 2000).

[3]The Hyatts also argue that the state court does not have personal jurisdiction over Myra Overright Hyatt. Because this issue was not raised before the district court, we decline to address it. See Carlson v. Hyundai Motor Co., 164 F.3d 1160, 1163 (8th Cir. 1999).

of preclusion under state counterclaim requirements, we turn to Missouri law. See Brannan v. Eisenstein, 804 F.2d 1041, 1044 (8th Cir. 1986).

Under Missouri Supreme Court Rule 55.32(a), a party is precluded from asserting counterclaims that are deemed to be compulsory and thus should have been brought in a previous action. See id. (explaining relevant Missouri law). Rule 55.32(a) states:

> (a) Compulsory Counterclaim. A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

This rule is "identical to [Federal Rule of Civil Procedure] 13(a)," and it functions "as 'a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims.'" State ex rel. J.E. Dunn, Jr. & Assocs., Inc. v. Schoenlaub, 668 S.W.2d 72, 75 (Mo. 1984) (en banc) (quoting Cantrell v. City of Caruthersville, 221 S.W.2d 471, 474 (Mo. 1949)). Under Rule 55.32(a), the subject of an opposing party's claim consists of the physical facts, things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted, and the term "transaction" is to be applied in its broadest sense, to include all facts and circumstances constituting the foundation of the claim. See Choate v. Hicks, 983 S.W.2d 611, 614, 613 (Mo. Ct. App. 1999). When the facts which would support a defense to the original claim would also support a counterclaim, the two arise from the same transaction. See id. at 614.

In sum, for a counterclaim to be compulsory under Missouri law, it must be a claim that, at the time of serving the pleading, arises from the same transaction or

-4-

occurrence as the original claim, i.e., is logically related to the claim in a broad sense; and must be brought by one party against an opposing party, not involving any third parties over whom the court cannot acquire jurisdiction.

We conclude that the Hyatts' and Bankcard's claims are logically related to the state court claim, because they involve the facts and circumstances of the making and enforcing of the same contract. In state court, Miller Jeep sued Bankcard for breach of contract, citing the February 1998 contract and the accompanying rider. The Hyatts' claims of breach of contract, fraud, and conspiracy to commit fraud also pertain to the February 1998 contract; they allege that it was Miller Jeep and its agents that failed to abide by the contract and that this failure, which harmed both Bankcard and the Hyatts, was intentional.

The Hyatts' RICO, malicious prosecution, and intentional infliction of emotional distress claims have a slightly different cast, as they rely more heavily on the events that occurred following the initial interactions. The scope of compulsory counterclaims, however, is not limited "to only those claims which are of the same nature or seek the same relief." Schoenlaub, 668 S.W.2d at 75. These claims, despite the shift in emphasis, still focus on what respondents, Bankcard, and the Hyatts did in response to each other's perceived failure to live up to the February 1998 contract. To hear these claims separately would defeat the function of Rule 55.32(a) by requiring a reexamination of the same events of the state court action in a later litigation. See Schoenlaub, 668 S.W.2d at 75. As we stated about the claims in Tullos v. Parks, 915 F.2d 1192, 1196 (8th Cir. 1990), "[t]o put the matter simply, all the claims asserted by both sides in this case are part of the fight between the parties."[4]

---

[4]Although under Missouri law a malicious prosecution claim based on a pending action may not even constitute a claim, much less a compulsory counterclaim in that pending action, because the Hyatts failed to raise this issue we will not address it.

This conclusion does not end our inquiry. For a counterclaim to be compulsory, it must be asserted by a party against an "opposing party," see Schoenlaub, 668 S.W.2d at 76; Oates v. Safeco Ins. Co., 583 S.W.2d 713, 717 (Mo. 1979) (en banc), or someone in privity with that party. See Schneeberger v. Hoette Concrete Const. Co., 680 S.W.2d 301, 303 (Mo. Ct. App. 1984). The Hyatts note that the state court action involves only Bankcard and Miller Jeep, not themselves, any of the individual defendants, or Chrysler.

Respondents refer to several cases for the proposition that "a compulsory counterclaim may arise without complete mutuality and identity of parties at the time it must be asserted," id.; see Barclay Inv. Corp. v. Lamkin, 408 S.W.2d 168, 169-70 (Mo. Ct. App. 1966), and contend that the minor difference in parties is not determinative because all of the individuals are corporate officers or employees of the corporations that are already parties. They rely heavily on Schneeberger, in which the Missouri Court of Appeals held that a homeowner was barred from bringing suit against a subcontractor for the same damage that the homeowner had previously claimed against the contractor. See Schneeberger, 680 S.W.2d at 303. The court there noted that a compulsory counterclaim may arise without complete mutuality and identity of parties and that if the defendant subcontractor "was a necessary party to the full adjudication of the issues in the [] suit, . . . it was [claimant's] duty to request that defendant [] be made a party." See id.

The same year that Schneeberger was decided, the Missouri Supreme Court reiterated that for it to be a compulsory counterclaim under Rule 55.32(a), the party's claim must involve an "opposing party." See Schoenlaub, 668 S.W.2d at 74. In Schoenlaub, a contractor had brought suit against a hospital and several other parties, but the hospital had already filed suit against the contractor. See id. The court found that the contractor's claims against the hospital were compulsory counterclaims under Rule 55.32(a) because they arose from the same transaction or occurrence and involved

the same parties, thus the contractor's separate suit was barred. See id. at 74-76. The court expressly held that the contractor's claims against an architect and a construction manager were not barred because they were not opposing parties in the first suit. See id. at 76. Schneeberger itself distinguished previous compulsory counterclaim cases by noting that those cases did not involve a party or someone in privity with a party.

We must determine, then, whether the claims brought by Bankcard and the Hyatts in federal court are claims by a party to the original action against an opposing party or someone in close privity to those parties. The breach of contract claims in both courts, by definition, are premised on the contract and rider between Miller Jeep and Bankcard. The Hyatts individually are not parties to the contract, and Miller Jeep does not argue that they are. Had the Hyatts acted solely as agents of Bankcard, it is possible that they would not have been required to bring all of their personal claims as counterclaims against Miller Jeep and others in the state court action. Compare Prentzler v. Schneider, 411 S.W.2d 135, 139, 137 (Mo. 1966) (en banc) (wrongful death claims between two widows about auto accident not compulsory in each other's suits; widows and administrators are not in privity and widow was "not a party defendant"), with Barclay Inv. Corp., 408 S.W.2d at 170 (landlord could not bring separate suit on lease against tenant and wife when tenant had already sued on lease; claim was compulsory and adding wife as party necessary).

Because the Hyatts' personal vehicles are a part of the contract between Bankcard and Miller Jeep, however, and because the Hyatts allege personal damages based on the failure of Miller Jeep to perform the February 1998 contract with Bankcard, we conclude that under Missouri law the Hyatts are necessary parties to the state court breach of contract action. Missouri Supreme Court Rule 52.04 is the appropriate rule regarding necessary parties, see Fruin-Colnon Corp. v. Missouri Hwy. & Transp. Comm'n, 736 S.W.2d 41, 43 (Mo. 1987) (en banc), and requires that a "person shall be joined in the action if . . . (2) he claims an interest relating to the

subject of the action" and is so situated that the disposition of the action may impede or impair his ability to protect that interest or leave a party subject to a substantial risk of inconsistent obligations.

In a breach of contract action, "the only parties defendant who may be necessary are the other parties to the contract sued on, and those who have an interest in the dispute which will be affected by the action." Bunting v. McDonnell Aircraft Corp., 522 S.W.2d 161, 169 (Mo. 1975) (en banc) (quoting Ray v. Wooster, 270 S.W.2d 743, 753 (Mo. 1954)). Because the Hyatts did not sign the February 1998 contract in their personal capacity, we turn to the second part of the test, which is whether they have an appropriate interest in the dispute. Such an interest "must be such a direct claim upon the subject matter of the action that the [nonparty] will either gain or lose by direct operation of the judgment to be rendered." See id. (quoting State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig, 364 S.W.2d 343, 346 (Mo. Ct. App. 1963)). We conclude that the Hyatts have such an interest; indeed, the Hyatts would have no claim at all were they not involved with the contract.

The Hyatts have a direct interest in the contract. Their personal vehicles were part of the contract, and their damage claims are based largely on the failure of Miller Jeep to retire the debt on these vehicles pursuant to the contract. Whether Bankcard wins or loses its breach of contract claim in state court will directly affect the Hyatts' interest, and should we permit the Hyatts to proceed separately, Miller Jeep would potentially be subject to inconsistent outcomes and obligations on the contract. Thus, we conclude that the Hyatts are necessary parties to the state court action. See id. at 379 ("If the court determines that a party is necessary, then the court shall order that he be made a party."). Once the Hyatts have been made parties in the state court action, as they must be, they are subject to Rule 55.32(a) just as is Bankcard, and they must bring their claims in that action.

We affirm the dismissal of all claims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.